DAVID MITCHELL'S ADM'R *v.* J. P. CANNON, ET AL.

**Decedent's Estates—Claims for Services Rendered Decedent by Relatives.**

The law will not imply a promise to pay for services of a daughter and her husband rendered to the daughter's parents, while living with them, but where such services are rendered with the expectation of being paid, and the parent, knowing this, fails to notify them of his intention not to pay for such services, the law will imply a promise on the part of a parent to pay what such services are reasonably worth.

**Competency of Evidence.**

Where in the trial of a claim against a decedent's estate, one of the heirs is offered as a witness, and an objection is sustained to the competency of such witness, but no statement is made as to what he would prove by such witness, the Court of Appeals cannot know that the evidence would have been material or that the refusal to permit him to testify was prejudicial to the appellant.

APPEAL FROM WOODFORD COURT OF COMMON PLEAS.

January 13, 1877.

OPINION BY JUDGE ELLIOTT:

On the 15th of March, 1875, David Mitchell departed this life, domiciled in the county of Woodford. At his death he was the owner of a farm of over two hundred acres of land and over three thousand dollars worth of personal property. In 1871 he was stricken by partial paralysis, and from that time up to his death he was unable to attend to his ordinary business as a farmer.

In September, 1872, the appellees, I. P. Cannon and wife (the latter of whom was his daughter), visited him. Their purpose was to bury at the graveyard on his farm their child that had died just before their visit. While there Manlines Mitchell, the son of David Mitchell and brother of Mrs. Cannon, rented his father's farm, and at his solicitation the appellee, I. P. Cannon, agreed to become his partner in its cultivation. It appears from the evidence that the deceased was very anxious that appellees should remain at his house and assist in taking care of himself and wife, who was also very unwell and confined to her bed most of her time. The appellee, Cannon, refused to remain, and when pressed for his reason by Manlines Mitchell, he told him that "he could not afford to stay for nothing, as he had to make a living for his family and he wanted to leave."

Mr. Manlines Mitchell says in his evidence, "I told my father what

Cannon said, and he replied that they must stay, that he could not get along without them, that they should not lose anything by it, and that he did not want anybody to work for him for nothing. I told Cannon this." Manlines Mitchell further testified that he had heard his father say that appellees ought to be well paid, and had heard him say in the presence of Cannon that he wanted nobody to work for him for nothing. Mrs. Williams proved that the decedent said in her presence that he wished the appellees to stay with him and take care of him, and that they should lose nothing by it; and another witness proves similar statements.

The evidence is quite conclusive that the wife of the deceased was confined to her bed, and was weak and feeble from disease from the time Cannon and wife went to his house until his death, and the proof is equally clear that the deceased was unable to move about further than his house and yard during the most of the same period, and for the last year of his life he was almost entirely confined to his room, and for months at a time to his bed. Appellees, from the time they went to the house of deceased in September, 1872, attended to the wants of the old people with an affection, energy and vigilance that is really commendable. The proof is that, unaided by other assistance, except at times that of a child or grandchild, or a colored girl, the appellees for nearly two years and a half administered to every wish and whim of those two old, infirm and diseased people, and did it without a murmur.

The proof shows that sometimes Mrs. Cannon's attention to her stepmother and father were in such demand that she had no time even to cook the meals for the family, when her husband, with cheerfulness, cooked them for her. The meals of Mrs. Mitchell had to be furnished her in her room, and the deceased was at times furnished with changes of clothes as often as five times in one night by Mrs. Cannon. Cannon and wife occupied the room in which the deceased was confined, and Mrs. Cannon not only attended to the wants of Mrs. Mitchell, who occupied another room, but she seemed to sit and with tearful eyes watch her aged father sink lower and lower and wrestle with his infirmities till he sank into his grave, always prompt in her efforts to try to relieve his suffering; and it seems that Mr. Cannon vied with his wife in his effort to cheer up and relieve the suffering of his old and afflicted father-in-law and mother-in-law.

For this labor and toil of appellees, performed day and night for about two years and a half, at the special instance of the deceased,

it is said that they can recover no remuneration because there was no express contract between them and the deceased that they should be paid.

It is true that, where the daughter and son-in-law reside at the house of the father and father-in-law and perform services for him, the law will not imply a promise of remuneration from the mere rendition of the service; but where, as in this case, he is notified and informed that his son-in-law and daughter will not remain with and perform service for him unless they are paid for it, and he afterwards retains them in his service without any notice to either of them that he did not intend to pay them, the law implies a promise on his part to pay a reasonable compensation for the services rendered.

Indeed, the authorities go farther, for if a son, daughter or son-in-law renders services for the parent, with the expectation of being paid therefor, and the parent, knowing that such payment is expected, fails to notify him of his intention not to pay him, the law implies a promise on the part of the parent to pay what such services are reasonably worth. *Cloud & Wife v. Clinkinbeard's Ex'rs,* 8 B. Mon. 397; *Fitch v. Packham's Ex'r,* 16 Vt. 150.

In this case it appears from the evidence that the appellee, I. P. Cannon, did not wish to enter into the laborious service of taking care of his mother-in-law and father-in-law in their discrepited and diseased condition, and he so notified them through the son of the decedent, and his reason was that he had a living to make for his family, and he would not undergo such slavish toil for nothing; that on receiving this notice the decedent said that the appellant must stay with him, and that he should lose nothing by it, and that they ought to be paid, and well paid, for their services; that these declarations were immediately afterwards communicated to Mr. Cannon. From this evidence it seems to this court that the jury was authorized to conclude that the appellees not only expected to be paid by the decedent for their services, and communicated that fact to him, but that he expected and intended to pay them what their services were worth. At one time, when the female appellee spoke of leaving his services, he burst into tears, and overcome by his entreaties and grief, she at once gave up all idea of leaving him during his illness. He told Mrs. Williams that the appellant was about to run the appellees off the place, and his grief and sorrow for fear they would leave was so pitiable that she besought Mrs. Cannon to stay and gratify her aged father, which she did.

During the progress of the trial the appellant offered as a witness for him one of the heirs of the decedent, and, on objection to his competency being made by the appellees, his evidence was refused by the court. Whether this ruling was correct or not is not necessary to decide, as the appellant failed to state what he would prove by the witness if he were permitted to testify, and therefore this court cannot know that his evidence would have been material to the issue being tried; or that the refusal to permit him to testify was prejudicial to appellant.

As to the value of the appellees' services there is some conflict in the evidence. The witnesses who had the greatest opportunities of knowing the amount of the services performed by appellees, and who were not related to the deceased, with but few exceptions fix their value at fifty dollars each per month; and we are of opinion that the evidence preponderates in favor of a larger sum in favor of appellees than was found by the jury, but even if this were otherwise, this court could reverse a judgment founded on the verdict of a jury unless the evidence greatly preponderated against such verdict, the only error for which a reversal is sought.

We have examined with care the instructions of the lower court, and are of opinion that they are as favorable to appellant as the law will permit, and as the verdict was fully authorized by the evidence the judgment in pursuance thereof is *affirmed*.

*Marshall & McLeod*, for appellant.

*D. L. Thornton*, for appellees.